IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

KELLY RONALD BLECK,

                         Plaintiff,

v.                                                                    OPINION and ORDER

ANDREW SAUL,                                             19-cv-75-jdp
   Commissioner of the Social Security Administration,

                         Defendant.
---

Plaintiff Kelly Ronald Bleck seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Bleck not disabled within the meaning of the Social Security Act. Bleck contends that the administrative law judge, Amy Rosenberg, erred by failing to adequately consider Bleck's subjective complaints of pain. The court will affirm the commissioner's decision. The oral argument scheduled for September 20, 2019, is cancelled.

ANALYSIS

Bleck seeks disability benefits from the period between May 1, 2011, and September 30, 2014, which was the date he was last eligible for benefits. In a March 2018 decision, the ALJ found that Bleck suffered from one severe impairment: left hip pain, which he first experienced while working on an oil rig in 2011. In light of Bleck's impairment, the ALJ found in her residual functional capacity assessment (RFC) that Bleck could perform sedentary work, with the additional restrictions that he could only occasionally climb, balance, stop, kneel,

crouch and crawl. R. 18.[1] "A claimant can do sedentary work if he can (1) sit up for approximately six hours of an eight hour workday, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand for no more than about two hours of an eight hour workday." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). Relying on the testimony of a vocational expert, the ALJ found that Johnson couldn't perform his past jobs as a roofer, digger operator, or lumberyard worker on a full-time basis but that he could perform other jobs, such as assembler or inspector.

A threshold question relates to the scope of Bleck's appeal. In the heading for the argument section of his brief, Bleck says that the ALJ erred by "playing doctor and by making his own findings regarding Bleck's condition without medical support." Dkt. 13, at 4. But Bleck's briefs don't actually address that issue. Rather, Bleck's briefs are devoted to the question whether the ALJ adequately considered Bleck's subjective complaints of pain. If Bleck intended to raise an argument about the ALJ making medical determinations without the assistance of an expert, he has forfeited that argument by failing to develop it.

So the court will turn to the ALJ's handling of Bleck's subjective complaints. An ALJ must give specific reasons for declining to credit all of a claimant's statements. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012). But if the ALJ gives these reasons, the court may not reweigh the evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Rather, the court must defer to the ALJ's credibility decision unless it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

---

[1] Record cites are to the administrative transcript, located at Dkt. 7.

In this case, Bleck points to his testimony that his pain is a "nine" on a scale of one to ten; it is a "ten" when he increases his activity, R. 44; he spends half the day lying down, R. 43; and his wife has to tie his boots for him, R. 41. He also points to his written statements in function reports that he is in constant pain, R. 230; he can only walk short distances and cannot sit for a "long time" without shifting his weight and moving, R. 234; he can't lift 10 pounds without pain, R. 234; and stair climbing is painful. R. 236.

Not all of these statements are necessarily inconsistent with an ability to perform sedentary work, but some of them might be, such as those related to Bleck's pain and his ability to sit and stand.[2] The court will assume that Bleck would have qualified as disabled if the ALJ had credited all his statements.

In determining that Bleck's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent" with other evidence, the ALJ observed the following:

- Bleck testified at the hearing that he hadn't done any roofing work after 2011, but his medical records show that he was continuing to do that work in 2013, R. 15 (citing R. 345);

- radiographs revealed only a mild pathology of the left hip, R. 19;

- Bleck chose to treat his hip pain conservatively with medication and a cortisone injection, R. 19;

- two consulting physicians concluded that Bleck could perform sedentary work, R. 19;

- in August 2011, Bleck's treating physician stated that Bleck could continue with activities as tolerated, R. 19;

---

[2] Bleck clarified during the administrative hearing that his pain is a "five" or "six" out of ten when he takes his medication. R. 44.

- in September 2011, Bleck's wife said that he was still bear hunting, R. 19;

- in September 2012, Bleck said that he was climbing on ladders and working on uneven surfaces, R. 19;

- in March 2013, Bleck said that his left hip only bothered him if he was up and down ladders too frequently, R. 19;

- in June 2014, Bleck stated that he had no health complaints, R. 19;

- in July 2014, Bleck again stated that he was going up and down ladders and that he was "very active" on his hobby farm, R. 20;

- medical exams were normal, R. 20;

- Bleck was able to walk without an assistive device, R. 20;

- no medical provider recommended surgery, R. 20.

The ALJ's reasoning can be grouped into six categories: (1) Bleck lied about not working after 2011; (2) Bleck's testimony was inconsistent with activities that he had participated in the past; (3) Bleck's testimony was inconsistent with his own previous descriptions of his symptoms; (4) Bleck's testimony was inconsistent with the opinions of the medical experts; (5) objective evidence didn't support his allegations; and (6) Bleck and his providers chose to treat his condition conservatively.

Bleck doesn't deny that each of these reasons would be adequate for discrediting his testimony. *See e.g., Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (upholding ALJ's determination that the plaintiff's subjective complaints "were not entirely credible" because of the plaintiff's multiple inconsistent statements). But Bleck responds to only some of the ALJ's reasons. First, he cites medical records that he says support his allegations. And he criticizes the ALJ for "cherry picking" the record by failing to discuss these records. But the ALJ doesn't have to address every document in the record; only those that undermine her decision. *Jones v.*

4

*Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). The documents that Bleck cites don't do that. Some of them are simply summaries of Bleck's own subjective complaints, so they are cumulative and don't buttress his credibility. And all of the documents simply reflect that Bleck suffered from a hip condition that caused him pain. R. 351, 356, 359, 394, 792–93. That doesn't help Bleck because the ALJ found that he suffered from a severe impairment related to his hip. The question is not whether Bleck has pain, but whether his pain is so severe that it renders him unable to do even sedentary work. Bleck doesn't explain how any of the records he cites show that.

Second, Bleck says that the ALJ was wrong to rely on his decision not to undergo surgery because "SSA does not obligate claimants to undergo [a] significant or risky procedure." Dkt. 10, at 15. But Bleck cites no evidence that he declined surgery on his hip because it was risky. In any event, the ALJ was making a broader point, which is that Bleck's treatment providers didn't believe that Bleck's condition was so serious as to *need* surgery or a similarly significant intervention. Rather, they prescribed more conservative treatment such as medication. In fact, Bleck's treatment providers didn't prescribe and Bleck didn't request an assistive device for walking, which undermines his allegations about his limited ability to walk and stand. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (ALJ may consider the fact that the plaintiff received only conservative treatment for his condition).

Third, Bleck says that the ALJs decision is undermined by the RFC and the opinions of the consulting physicians:

> Obviously, given both the residual functional capacity determination and the weight given to the state agency physicians – who both found a limitation to sedentary work – the condition was serious enough to significantly limit to sedentary work. With that being the case, why Bleck's condition would not have limited

5

> him to less than sedentary work, e.g., less than full-time work; was never addressed or explained by the ALJ.

Dkt. 10, at 18. Bleck seems to be saying that because the evidence supported a conclusion that he was limited to sedentary work, he must have been even *more* limited. But that argument isn't supported by any evidence, authority, or even logic. In any event, the ALJ *did* explain her conclusion, providing all the reasons cited above.

Fourth, Bleck says that the ALJ wasn't entitled to rely on any inconsistencies in the record without giving him an opportunity to explain those inconsistencies. But the case law Bleck cites stands for the unremarkable proposition that the ALJ must allow a claimant to clarify ambiguous statements or conduct when there is a potential plausible explanation that would support a disability claim. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (ALJ should have inquired whether claimant chose not to have surgery because it was "invasive and expensive"); *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) (ALJ should have inquired why claimant was not taking her medication in light of other evidence that she could not afford the medication and the side effects were "intolerable"); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (statement that plaintiff took a vacation not probative of limitations caused by stroke without more information about what plaintiff did on vacation).

In this case, Bleck hasn't pointed to any plausible explanations for the inconsistencies. He says that "bear hunting" could consist of nothing more than "travel[ing] with a party of friends and sit[ting] in the camp while others actively pursue bears." Dkt. 10, at 19. But that explanation is rebutted by Bleck himself. At the administrative hearing, Bleck testified that he now has a permit to hunt from his vehicle. R. 39. But he admitted that he went hunting without that permit in 2011 and 2012. *Id.* Although he said that it was "hard," he did not say that he refrained from any activities that would normally be associated with hunting on foot. *Id.*

As for the evidence that Bleck continued working as a roofer after his alleged onset date, Bleck says that the "record could be wrong" or that he may have worked for only "a few days" before realizing that it was too hard for him. Dkt. 13, at 14. But the ALJ cited multiple documents from 2012, 2013, and 2014 stating that Bleck was continuing to climb up and down ladders, either for roofing or other reasons. Again, Bleck's explanation is simply not plausible.

Even if the court were to disregard the inconsistencies that Bleck challenges, that would still leave Bleck's own statements that undermine his testimony. For example, Bleck doesn't address his statement from 2013 that his hip doesn't bother him unless he is climbing up and down ladders. Because that statement directly contradicts Bleck's testimony that he is in constant pain, that statement alone would be enough to support the ALJ's credibility decision.

In his reply brief, Bleck says that the ALJ erred by failing to discuss the effectiveness of his medications, what caused his pain, how the pain affected him, and what his daily activities were. To some extent, the ALJ did consider some of these issues by reviewing the record to determine what Bleck was capable of doing despite his allegations of pain. It is true that the ALJ didn't include a discussion about the effectiveness of Bleck's medications, the cause of his pain, or his daily activities, but Bleck doesn't explain why that matters or how doing so would have supported his claim. The cause of Bleck's pain is less important than whether the pain is disabling. Similarly, the effectiveness of Bleck's medications isn't probative if the evidence shows that, with or without medication, Bleck is capable of full-time work. The ALJ supported her decision with specific reasons and evidence from the record that Bleck was not as limited as he said he was, which was all the ALJ was required to do. Bleck has failed to show that he is entitled to a remand and the court will affirm the ALJ's decision.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the September 20, 2019 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered September 10, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge